IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| PAULA BUTTE, | : | |
|---|---|---|
| Plaintiff | : | No. 2:17-cv-00131 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| CONTINUOUS LEARNING GROUP, | : | |
| Defendant | : | |

# MEMORANDUM

Before the Court is Defendant Continuous Learning Group ("CLG")'s motion for summary judgment. (Doc. No. 20.) For the reasons that follow, the Court will grant the motion.

## I. BACKGROUND[1]

Plaintiff Paula Butte ("Plaintiff"), was employed with CLG from September 14, 1999 through November 1, 2015. (Doc. No. 21 ¶ 1.) On June 1, 2006, Plaintiff was promoted to the position of Senior Principal. (Id. ¶ 2.) Plaintiff held the position of Senior Principal from that date until she became a Partner on January 1, 2013. (Id. ¶ 3.) In 2015, Plaintiff received gross compensation in the amount of $161,080.51. (Id. ¶ 5.)[2]

---

[1] The following relevant facts of record are taken from CLG's Concise Statement of Material Facts ("CSMF") (Doc. No. 21), and Plaintiff's Response in Opposition to Defendant's Concise Statement of Material Facts ("Response") (Doc. No. 26). CLG's CSMF contains specific citations to the record at each numbered paragraph.

[2] The following facts, set forth by CLG in its CSMF, are disputed by Plaintiff insofar as she indicates in her Response that they are "Denied." However, Plaintiff's Response fails to comply with Local Rule 56C of this Court, which requires, in each numbered paragraph, a responsive concise statement of facts to set forth "the basis for the denial of any fact contained in the moving party's Concise Statement of Material Facts [that] is not admitted in its entirety . . . with appropriate reference to the record." LCvR 56C1.b. Plaintiff's Response to CLG's CSMF fails to identify the basis for her denial of any facts or to contain any reference to the record, and therefore, Plaintiff fails to dispute any of the facts contained in CLG's CSMF properly. Accordingly, for purposes of the Court's disposition of this motion, all facts set forth in CLG's CSMF will be deemed admitted. See LCvR 56E (stating that "[a]lleged material facts set forth in the moving party's Concise Statement of Material Facts . . . will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied"). In addition,

1

In 2015, Plaintiff incurred $35,000 in business development expenses, and developed $45,000 in business for CLG. (Id. ¶ 6.) In the eleven months preceding Plaintiff's termination, CLG incurred a loss in excess of $150,000 by employing Plaintiff. (Id. ¶ 7.) CLG's CEO, Vikesh Mahendroo ("Mr. Mahendroo"), made the decision to terminate Plaintiff. (Id. ¶ 8.) In 2014, CLG hired Tom Rottenberger ("Mr. Rottenberger"), who was ultimately terminated at the same time as Plaintiff. (Id. ¶¶ 9, 11.) In 2014 and 2015, Plaintiff and Mr. Rottenberger, a Senior Partner, developed the least amount of revenue of all of the partners. (Id. ¶ 10.) Plaintiff admits that she was not surprised to hear that Mr. Rottenberger was terminated, as he was expensive and revenues were down. (Id. ¶ 12; Doc. No. 26 ¶ 12.) At the time of their respective terminations, Plaintiff and Mr. Rottenberger were not the only partners who did not meet their yearly revenue targets. (Doc. No. 21 ¶ 13.)[3] As a result of terminating Plaintiff and Mr. Rottenberger, Defendant sustained no loss of revenue. (Id. ¶ 15.)

In 2011 and 2012, Plaintiff worked with Senior Partner Steve Jacobs ("Mr. Jacobs"), to deliver consulting services for two CLG clients – the Bank of Montreal and Cadillac Fairview. (Id. ¶ 16.) During this time, Plaintiff spoke on the phone with Mr. Jacobs approximately one to two times per month to discuss the projects. (Id. ¶ 17.) During some of these phone conversations, Mr. Jacobs was critical of the quality of Plaintiff's work. (Id. ¶ 18.) No male employees (other than Mr. Jacobs) worked on the Bank of Montreal account, while one male employee (other than Mr. Jacobs) worked on the Cadillac Fairview account. (Id. ¶¶ 20-21.) Plaintiff did not know whether Mr. Jacobs had ever been similarly critical of that male employee's work. (Id. ¶ 22.)

---

Plaintiff's Response does not set forth "any other material facts that are allegedly at issue," as may be required to oppose a motion for summary judgment. See LCvR 56C1.c.

[3] If all partners who were below their revenue targets had been terminated, CLG would not have been able to remain in business. (Doc. No. 21 ¶ 14.)

In 2014, Plaintiff was asked to work with Mr. Jacobs to prepare a proposal and deliver a human resources workshop for another client, Flowserve. (Id. ¶ 23.) No other CLG employees were involved in the Flowserve project. (Id. ¶ 24.) In connection with her work on the Flowserve project, Plaintiff took part in a number of phone conferences with Mr. Jacobs. (Id. ¶ 25.) While a number of the calls went well, there were several calls during which Mr. Jacobs was critical of the quality of Plaintiff's work. (Id. ¶ 26.) After delivering the workshop to Flowserve in 2014, Plaintiff did not have any further interactions with Mr. Jacobs wherein he was critical of her work. (Id. ¶ 28.)

In June 2015, Plaintiff met Laura Methot ("Ms. Methot"), a fellow Partner, and Karen Gorman ("Ms. Gorman"), a Senior Partner and CLG's Chief People Officer, for drinks at a hotel bar following a partner meeting in Toronto, where Ms. Methot raised the subject of Mr. Jacobs' interactions with another employee. (Id. ¶¶ 29-30.) Plaintiff could not recall whether she said anything to Ms. Gorman regarding her own experiences with Mr. Jacobs. (Id. ¶ 31.) Plaintiff testified that before her termination, she believed that she had been excluded from business development opportunities with Canadian financial institutions by Mr. Jacobs. (Id. ¶ 32.) Plaintiff believed that Mr. Jacobs and Mr. Mahendroo may have solicited business together from Sun Life, as Mr. Mahendroo had professional connections to Sun Life preceding his employment with CLG. (Id. ¶ 33.) Plaintiff also believed that Mr. Jacobs and Mr. Rottenberger had solicited business from a client together at some point on at least one other occasion. (Id. ¶ 34.) Plaintiff did not identify any other instances in which she believed that Mr. Jacobs solicited business with another male employee. (Id. ¶ 35.)

After her termination on November 1, 2015, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), on or about November 30,

3

2015. (Id. ¶ 36.) On or about November 1, 2016, Plaintiff received her Notice of Right to Sue from the EEOC for her Charge of Discrimination. (Doc. No. 1-2.) Plaintiff filed a complaint alleging gender discrimination in violation of Title VII, 42 U.S.C. § 2000e et seq. on January 27, 2017. (Doc. No. 1.) At the conclusion of discovery, CLG filed a motion for summary judgment (Doc. No. 20), with a Concise Statement of Material Facts (Doc. No. 21), and supporting brief (Doc. No. 20). Plaintiff filed a Response to CLG's Concise Statement of Material Facts (Doc. No. 26), and a brief in opposition to CLG's motion (Doc. No. 25), on November 27, 2017. CLG filed its reply brief on December 13, 2017. (Doc. No. 27.) Accordingly, the motion has been fully briefed and is ripe for disposition.

## II. LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d

135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. Celotex, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant a motion for summary judgment when the non-movant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial. Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

**III.    DISCUSSION**

"[G]ender-based employment discrimination claims can be brought under theories of hostile work environment, disparate treatment, or disparate impact." Heneghan v. Northampton Cmty. Coll., 801 F. Supp. 2d 347, 359 (E.D. Pa. 2011), aff'd 493 F. App'x 257 (3d Cir. 2012) (internal quotation marks omitted). As CLG notes, while Count 1 of Plaintiff's complaint is generally labeled "Gender Discrimination," it appears to contain allegations potentially supporting claims for hostile work environment and disparate treatment, and the parties have

briefed the issues accordingly. Count 2 of Plaintiff's complaint asserts a claim for "Gender Discrimination – Retaliation." The Court addresses each claim in turn.

### A. Gender Discrimination – Hostile Work Environment

#### 1. Legal Standard Applicable to Hostile Work Environment Claims

As set forth above, a plaintiff may assert a claim for gender discrimination in violation of Title VII under a hostile work environment theory. See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986). To establish a hostile work environment claim, a plaintiff must demonstrate that:

1) He or she suffered intentional discrimination on the basis of membership in a protected group;

2) The discrimination was pervasive and regular;

3) The discrimination detrimentally affected the plaintiff;

4) The discrimination would detrimentally affect a reasonable person of the same race, gender, religion, or national origin in the same position; and

5) The existence of respondeat superior liability.

Mandel v. M & G Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013). While the first four elements demonstrate a hostile work environment, the fifth determines employer liability. Id. In analyzing a hostile work environment case, courts consider "the totality of the circumstances." Id. at 168.

In order to establish that harassment is sufficiently severe or pervasive to constitute a hostile environment under the standard set out above, a plaintiff must demonstrate that the workplace in question was "permeated with discriminatory behavior" that is sufficiently severe as "to create a discriminatorily hostile or abusive working environment." Harris v. Forklift Sys., 510 U.S. 17, 17 (1993) (citing Meritor, 477 U.S. at 57). Moreover, "[t]his standard requires an

objectively hostile or abusive environment – one that a reasonable person would find hostile or abusive – as well as the victim's subjective perception that the environment is abusive." Id. (citing Meritor, 477 U.S. at 64, 67). In addition, the employer must be liable for the alleged hostile work environment. See Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998) (citing Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998)) ("An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate . . . authority over the employee.").

### 2. Plaintiff's Hostile Work Environment Claim

As an initial matter, CLG argues that Plaintiff's gender discrimination claim based on a hostile work environment theory is time-barred, as it argues that she failed to file a complaint with the EEOC within 300 days of the alleged unlawful employment practice. (Doc. No. 20 at 6-8.) As to the merits of Plaintiff's claim, CLG argues that Plaintiff has failed to adduce evidence sufficient to establish the first, second, fourth,[4] and fifth elements of a hostile work environment claim. (Id. at 8-15.) The Court declines to address CLG's argument that Plaintiff's hostile work environment claim is time-barred, as it finds that, in any event, Plaintiff has failed to adduce evidence from which a reasonable factfinder could infer that she was subjected to a gender-based hostile work environment. The Court addresses each element of the claim in turn.

The first element is met "where . . . the evidence tends to show that the harasser's conduct was intentionally directed toward the plaintiff because of her [gender]." Hegyes v. U.S. Steel Corp., No. 2:04CV1283, 2007 WL 218711, at *7 (W.D. Pa. Jan. 25, 2007) (quoting Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 279 (3d Cir. 2001)). Plaintiff's testimony establishes that Mr. Jacobs' comments to her pertained to the quality of her work.

---

[4] As CLG notes, the objectiveness standard of the fourth element is typically analyzed in connection with the pervasiveness standard of the second element. See Harris, 510 U.S. at 21.

7

(Doc. No. 21-5, Butte Dep. at 53:23-54:10, 56:2-7.) While Plaintiff argues in her brief that she has pointed to evidence in the record indicating that Mr. Jacobs criticized the work of two other female employees of CLG (and thereby suggests that Mr. Jacobs' criticism of her work was gender-based), CLG points to evidence in the record suggesting that Mr. Jacobs similarly directed work-related criticism at male employees. CLG cites the testimony of Karen Gorman, CLG's Chief People Officer, as follows:

> Q To your knowledge, [did] many employees of CLG that were men have disagreements with Steve?
>
> A Yes.
>
> Q And I meant Steve Jacobs. Was that clear?
>
> A Yes.
>
> Q It's not just an issue that has been raised with female employees?
>
> A No, not at all.

(Doc. No. 21-10, Gorman Dep. at 154:16-25.)

Moreover, even assuming that the criticisms identified by Plaintiff sufficed to meet the first element, Plaintiff has failed to adduce evidence from which a reasonable factfinder could infer that any such conduct was so regular and pervasive so as to subject her to an abusive work environment. Because "the threshold for pervasiveness and regularity of discriminatory conduct is high," the conduct at issue must be "so severe and pervasive that it 'alters the conditions of the victim's employment' and creates an 'abusive working environment.'" See Greer v. Mondelez Global, Inc., 590 F. App'x 170, 173 (3d Cir. 2014). "'Mere offensive utterances' are insufficient to create a hostile environment, even if they engender offensive feelings in an employee." Id. at 173 (citation omitted). Based on the Court's review of the record, even if the criticisms leveled by Mr. Jacobs to Plaintiff amounted to "offensive utterances," they certainly do not amount to

8

conduct that meets the high threshold of severity and pervasiveness so as to "'alter[] the conditions of the victim's employment' and create an 'abusive working environment.'" See id. With regard to criticism directed toward her, Plaintiff has failed to adduce evidence from which a reasonable factfinder could infer that she has established the first, second, and fourth elements of a hostile work environment claim. See Harris, 510 U.S. at 21 ("mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect conditions of employment to implicate Title VII"); Grassmyer v. Shred-It USA, Inc., 392 F. App'x 18, 25 (affirming that the plaintiff's allegations that that her manager "frequently used the work 'f—k' in the office" were not "so 'severe or pervasive' as to support a hostile work environment claim").

Plaintiff also attempts to demonstrate evidence of gender-related harassment based on Mr. Jacobs' alleged denial to her of business development opportunities that were made available to male employees. (Doc. No. 25 at 6-7.) In her deposition, Plaintiff states that Mr. Jacobs may have solicited business from Sun Life with Mr. Mahendroo, based on Mr. Mahendroo's connection to Sun Life that preceded his employment with CLG. (Doc. No. 21-5, Butte Dep. at 146:17-147:12.) She also stated her belief that Mr. Jacobs and Mr. Rottenberger solicited business from a client together on at least one occasion, but was unable to provide more specific details as to this belief. She testified as follows:

> Q     Sitting here today, you're not able to identify any business development opportunities where Mr. Jacobs brought a male employee with him rather than a female employ[ee]?
>
> A     Well, I know he did, but I don't know the discrete names. But I know he was running around with Tom Rottenberger a lot.
>
> Q     When you say "a lot," can you explain what you mean by that?

9

> A   I know there was a period of time that Steve and Tom were working on leads. I don't recall what they were going after.
>
> Q   Do you know how many times they went out?
>
> A   I'm sorry, I don't.
>
> Q   You're not able to estimate?
>
> A   (Witness indicating.)
>
> Q   No? You just have to –
>
> A   I'm just thinking back to partner meeting after partner meeting, having report-outs, the two of them talking together. So it's – I don't know. I just don't know. I don't want to misspeak and guess because that's crazy.
>
> Q   That's okay. You remember coming up that they had solicited a client on at least one occasion?
>
> A   Oh, yeah.
>
> Q   But you're not sure how many?
>
> A   Yeah.

(Doc. No. 21-5, Butte Dep. at 147:13-148:16.)

However, as CLG points out, Plaintiff has failed to put forth any evidence, more specific than that detailed in her deposition, regarding any meetings from which she was excluded, such as the dates, the persons in attendance, or the subject matter. Plaintiff's belief that she was denied business opportunities because of her gender, without more, is insufficient evidence from which a reasonable factfinder could infer that she was subjected to harassing conduct because of her gender. Accordingly, with regard to exclusion from business development opportunities, Plaintiff has failed to identify evidence from which a reasonable factfinder could infer that she was subjected to harassing conduct because of her gender – the first element of a hostile work environment claim.

In light of the Court's finding as to Plaintiff's failure to establish the first, second, and fourth elements of a hostile work environment claim, the Court need not address CLG's argument that Plaintiff has also failed to adduce evidence sufficient to meet the fifth element of a hostile work environment claim – respondeat superior liability. CLG is entitled to summary judgment as to Plaintiff's hostile work environment claim.

### B. Gender Discrimination - Disparate Treatment

#### 1. Legal Standard Applicable to Disparate Treatment Claim

Discrimination claims relying on circumstantial evidence are governed by the three-part framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of discrimination, which requires a plaintiff to establish that: (1) the plaintiff is a member of a protected class, (2) he or she was qualified for his position, (3) he or she suffered an adverse employment action, and (4) that adverse employment action gives rise to an inference of unlawful discrimination. See Tourtellotte v. Eli Lilly & Co., 636 F. App'x 831, 842 (3d Cir. 2016) (citing Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410-11 (3d Cir. 1999)). In order to raise an inference of discrimination, the fourth element of a prima facie case, a plaintiff must show acts that, "if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978); see also Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 356 (3d Cir. 1999) (explaining that "Supreme Court precedent . . . clearly require[s] only 'evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion'"). A plaintiff may raise this inference by showing that similarly-situated individuals outside the protected class were treated more favorably than the plaintiff, Matczak v. Frankford Candy and Chocolate Co., 136

F.3d 933, 939 (3d Cir. 1997), but this test is a flexible one, and different factual circumstances may call for different analyses. See Pivirotto, 191 F.3d at 357.

If a plaintiff meets this burden, the defendant must "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. See id. If the defendant does so, the burden returns to the plaintiff to show that the defendant's non-discriminatory reason for the employment action is a pretext for discrimination. See id. In evaluating pretext in the context of a summary judgment motion, a plaintiff must provide evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Palmer v. Fed. Express Corp., 235 F. Supp. 3d 702, 715 (W.D. Pa. 2016) (citing Michael's v. BJ's Wholesale Club, Inc., 604 F. App'x 180, 182 (3d Cir. 2015)).

### 2. Plaintiff's Disparate Treatment Claim

CLG maintains that Plaintiff has failed to produce evidence from which a reasonable factfinder could infer that unlawful discrimination motivated the adverse employment action taken against her – the fourth element of a prima facie case. (Doc. No. 20 at 16-18.) CLG notes that Plaintiff's complaint alleges that she was treated differently from similarly-situated male employees in regard to: criticism directed toward her by Mr. Jacobs; exclusion from sales opportunities; and her ultimate termination. (Doc. No. 1 ¶¶ 14-23.) As discussed supra, with regard to criticism by Mr. Jacobs or exclusion from sales opportunities, Plaintiff has failed to adduce sufficient evidence from which a reasonable factfinder could infer that she was treated differently than similarly situated male employees. As to the circumstances of her termination, CLG argues that Plaintiff has similarly failed to point to evidence from which a reasonable factfinder could infer that its decision to terminate her employment was based on her gender, or

that she was replaced by a male employee. (Doc. No. 20 at 17.) Further, CLG points to evidence that Plaintiff was terminated for performance-related reasons, including evidence that at the time of her termination, Plaintiff and Mr. Rottenberger, the male employee terminated at the same time, had the lowest revenue figures for all partners for the two consecutive prior years. (Doc. No. 21-9 at 2.) Accordingly, CLG maintains that, based on the evidence in the record, no reasonable factfinder could infer that discrimination motivated CLG's decision to terminate Plaintiff so as to meet the fourth element of a <u>prima</u> <u>facie</u> case, and further, even assuming Plaintiff could establish a <u>prima</u> <u>facie</u> case, based on the evidence of record, no reasonable factfinder could infer that CLG's non-discriminatory reason for terminating Plaintiff's employment was a pretext for unlawful discrimination. (Doc. No. 20 at 17-18.)

In response, Plaintiff reiterates arguments she previously made in connection with her hostile work environment claim regarding her alleged exclusion from sales opportunities, yet she again fails to point to any evidence in the record identifying specific details of any opportunities from which she (but not similarly-situated male employees) was excluded. (Doc. No. 25 at 11-12.) As to the circumstances of her termination, Plaintiff argues that Mr. Rottenberger, who was terminated at the same time, was not similarly-situated to her in terms of performance, as she had a long track record at CLG, while Mr. Rottenberger was much more recently hired. (<u>Id.</u> at 12-13.) However, Plaintiff fails to point to any evidence of ecord disputing the evidence referenced by CLG that Plaintiff and Mr. Rottenberger, at the time of their terminations, had the lowest revenues of all sales partners during the two preceding years.[5] Under these circumstances,

---

[5] Plaintiff argues that two male partners besides Mr. Rottenberger failed to meet their revenue targets in the years preceding her termination, yet were not terminated, in an apparent effort to demonstrate that she was performing comparably to those two partners and to raise an inference that her termination must have been based on her gender, as opposed to her performance. (Doc. No. 25 at 12-14.) However, as pointed out by CLG, those two partners generated $4,496,380 and $1,578,044 in revenue, respectively, in the timeframe identified by Plaintiff, compared to the

13

Plaintiff has failed to adduce evidence from which a reasonable factfinder could infer that gender discrimination, rather than poor performance, motivated her termination, and therefore, she has failed to establish a prima facie case of disparate treatment. Accordingly, CLG is entitled to summary judgment as to Plaintiff's disparate treatment claim.

### C. Gender Discrimination - Retaliation

**1. Legal Standard Applicable to Title VII Retaliation Claims**

To establish a prima facie case of retaliation pursuant to Title VII, a plaintiff must point to evidence that "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995) (citation omitted). "To engage in 'protected activity' a plaintiff cannot complain about merely unfair treatment, rather they must complain about discrimination based on membership in a protected class." McClain v. Avis Rent A Car Sys., Inc., 648 F. App'x 218, 224 (3d Cir. 2016). Complaints may be in the form of formal disciplinary charges or grievances against an employer, and may also include "informal protests of discriminatory employment practices, including making complaints to management." See Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir. 2015) (internal quotation marks omitted); Merke v. Lockheed Martin, 645 F. App'x 120, 124 (3d Cir. 2016). As to what constitutes protected activity, the standard "requires an 'objectively reasonable belief' that the activity the plaintiff opposed constituted unlawful discrimination under the relevant statute." See Daniels, 776 F.3d at 193-94 (citation omitted). With regard to the third element of a prima facie

---

$865,993 generated by Plaintiff in that timeframe. (Doc. No. 21-9 at 2.) This evidence does not demonstrate that Plaintiff was performing comparably to these non-terminated partners, nor does it cast any doubt on the evidence proffered by CLG demonstrating that Plaintiff and Mr. Rottenberger had the lowest revenues of all partners during the two years preceding Plaintiff's termination date, justifying their termination for performance reasons.

case, "[t]o demonstrate a link between protected activity and an employer's adverse action, a plaintiff may rely on the temporal proximity between the two if 'unusually suggestive.'" Id. at 196 (citation omitted). However, in the absence of temporal proximity,

> we consider the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action.

Id.

### 2. Plaintiff's Retaliation Claim

In maintaining that it is entitled to summary judgment on Plaintiff's retaliation claim, CLG argues first that there is no evidence that Plaintiff reported discriminatory conduct to CLG and therefore engaged in "protected activity." Second, CLG argues that even assuming that Plaintiff engaged in "protected activity," there is no evidence that Ms. Gorman, CLG's Chief People Officer, to whom Plaintiff complained about Mr. Jacobs' criticism of her work, told either Mr. Jacobs or Mr. Mahendroo (who ultimately terminated Plaintiff), that Plaintiff had made a complaint about Mr. Jacobs, so as to establish a causal connection between these two events. (Doc. No. 20 at 19.) Accordingly, CLG maintains that it is entitled to summary judgment on Plaintiff's retaliation claim.

In response, Plaintiff points to specific testimony of Ms. Gorman in an effort to establish that Mr. Jacobs and Mr. Mahendroo were informed of the complaint made by Plaintiff, citing the following exchange from Ms. Gorman's deposition:

Q    You're in charge of human resources –

A    Yes.

Q    -- at that company. Did you take any action in that role following now the second complaint you had heard regarding an employee, the chairman of the board at that Company?

15

| | | |
|---|---|---|
| | A | We had taken action prior to [Plaintiff] telling me what she said that evening. |
| | Q | What action have you taken? |
| | A | I reported it to Steve's manager, Vikesh Mahendroo, and he had a conversation with Steve. |
| | Q | When did that occur if you recall? |
| | A | I believe it was in May of 2015. |

(Doc. No. 25-1, Gorman Dep. at 116:2-17.)

However, as noted by CLG, this exchange demonstrates that Ms. Gorman reported <u>another</u> individual's complaint about Mr. Jacobs to Mr. Mahendroo, who reportedly had a conversation with Mr. Jacobs regarding the same, <u>prior to</u> Plaintiff's complaint to Ms. Gorman. This exchange, therefore, does not provide support for the contention that Ms. Gorman informed Mr. Jacobs and Mr. Mahendroo about <u>Plaintiff's</u> complaint. (Doc. No. 25 at 13-14.) Accordingly, even assuming that Plaintiff's complaint constituted "protected activity," Plaintiff has failed to adduce evidence from which a reasonable factfinder could infer that the individuals alleged to have retaliated against her had any knowledge of her complaint.

Further, even assuming <u>arguendo</u> that: (1) the record contained evidence from which a reasonable factfinder could infer that Mr. Jacobs and Mr. Mahendroo had knowledge of Plaintiff's complaint about Mr. Jacobs, and (2) that Plaintiff's complaint could be viewed as reporting discriminatory conduct and therefore qualify as "protected activity," the Court finds that CLG would be entitled to summary judgment on Plaintiff's retaliation claim. The only other evidence Plaintiff cites in support of her argument regarding a causal connection sufficient to establish a <u>prima facie</u> claim of retaliation is the timing of her complaint to Ms. Gorman in June of 2015 relative to the decision to terminate her, which occurred less than four months later.

Plaintiff argues in a conclusory manner, without reference to any authority, that such a timeframe of fewer than four months between complaint and termination supports an inference of retaliation sufficient to establish a prima facie case of retaliation. (Doc. No. 25 at 14.)

However, CLG correctly notes that the United States Court of Appeals for the Third Circuit has held that a period of three months between the alleged protected activity and adverse employment action, alone, is insufficient to create an inference of causation sufficient to defeat a motion for summary judgment. See LeBoon v. Lancaster J.C.C. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) (holding that "[a]though there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment"). Plaintiff has failed to point to evidence in the record from which a reasonable factfinder could infer that she engaged in a protected activity and that there was a causal connection between that activity and her termination. Accordingly, CLG is entitled to summary judgment as to Plaintiff's gender discrimination retaliation claim.

## IV. CONCLUSION

For all of the reasons discussed above, Defendant's motion for summary judgment (Doc No. 20), will be granted. An Order consistent with this Memorandum follows.